## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
             Plaintiff,

 -vs-

                                    CASE NO.  24-CR-0004

                                    Hon. Randolph D. Moss

PAUL CALOIA,

            Defendant.

_____/

### DEFENDANT'S SENTENCING MEMORANDUM

#### I.

#### INTRODUCTION

Paul Caloia admits his participation in the January 6, 2021, riot and has pleaded guilty to two offenses related to his conduct. Because Mr. Caloia did not participate in any violent or destructive acts on that day and because his conduct after the event shows that he was appropriately shocked and concerned about the consequences of his conduct, no sentence of incarceration is necessary. He asks this Court to impose a probationary sentence of 24 months.

#### II.

#### MR. CALOIA'S PARTICIPATION ON JANUARY 6TH

Paul Caloia went to Washington, D.C., to witness history. He believed that at the January 6, 2021, rally, President Donald Trump would reveal evidence of voter fraud that

would require the November 2020 election to be overturned. Aided by right-wing news sources, Mr. Trump had been laying the groundwork for his false claims months before the election. These claims aimed to prepare his supporters to take action if he lost that election.

Mr. Caloia was one of those supporters who Mr. Trump conned. However, unlike many of his fellow rally attendees whose consumption of fringe media had prepared them for a violent insurrection, Mr. Caloia came prepared for a rally, not a riot. He wore a coat and a winter Detroit Red Wings hat, not a bulletproof vest and tactical helmet. He wore a standard cloth coronavirus mask, not a gas mask or ski goggles. He was armed with his cell phone, not a bat or firearm.

When speaking at his rally, Donald Trump told his supporters he would see them at the Capitol building, and Mr. Reyna dutifully marched there from the rally. Similarly, he dutifully followed his fellow demonstrators onto the Capitol grounds and into the building as the protest turned into a riot. During his participation, Mr. Caloia's on-camera persona and thinking oscillated between that of a participant and an observer.

Image 2 of the Government's sentencing memorandum shows that as Mr. Caloia marches toward the building, he takes pictures of the crowd. The Government correctly quotes his statement from his video as he enters (Gov't Ex. 3), "We're literally storming the Capitol building right now. We're just going inside; we're just going inside, baby." However, the quote does not capture his amazement and confusion about the occurring events. Later in the video, once inside the Capitol building, he seems to disassociate himself from what is going on, "People are just taking over . . . What even is this?" Gov't Ex. 3 at 1:18.

2

Later, while walking through the Capitol, he is asked if he thinks the event has gone too far. He responds to the questioner that "they're freaky," referring to his fellow rioters, and admonishes his companions, "Just don't break anything." Gov't Ex. 6 at:25.

None of this means that Mr. Caloia was not a willing and culpable participant in the January 6 riot. It does, however, show that he came physically and emotionally unprepared for what happened that day. This differentiates him from the many more culpable participants who came to Washington, D.C., prepared to do whatever was necessary to install Mr. Trump into office.

After January 6, Mr. Caloia watched the coverage of the events and was shocked and frightened by what he saw. While his act of deleting all his media related to January 6 was obstructive, it also demonstrates a realization of how wrong and serious his conduct was and indicates that he is very unlikely to ever be involved in this sort of activity again.

III.

MR. CALOIA'S BACKGROUND

Mr. Caloia is from a stable and loving family. He works as an internet personality and hypnotherapist. He has two prior convictions. One for smoking marijuana when he was 18 years old. One for drunk driving when he was 29 years old. He successfully completed probation for the drunk driving case. Neither conviction should give the Court any pause that Mr. Caloia has antisocial personality traits or can't conform his conduct to the law. He has had no issues while on bond and will have no problems on probation. Nothing in his background indicates that a custodial sentence is necessary to deter his future conduct.

IV.

COMPARABLE CASES

The Government points to three cases in which custodial sentences were imposed that it feels are comparable to Mr. Caloia's. Each of these cases contains aggravating factors that Mr. Caloia's does not.

In *United States v. Fiol*, the defendant left the rally at the Ellipse early to march toward the Capitol building and purchased ski googles in anticipation of his trip to Washington, D.C. These actions indicate that Fiol had preplanned a confrontation with police officers using tear gas before he began his trip. He also bragged about his participation in the attack. Case No. 1:23-CR-00196 (RCL).

Similarly, in *United States v. Mazzio*, the defendant brought body armor and a gas mask to Washington, D.C., and remained remorseless throughout the process. Case No. 1:22-CR-00214 (RCL).

In *United States v. Holdridge*, the defendant was a fugitive from justice who fled prosecution to participate in the riot. Case No. 1:21-CR-00729 (RBW).

Unlike the defendants in *Fiol* and *Mazzio*, Mr. Caloia did not come prepared to confront the police and tear gas. His attitude of amazement as he enters the Capitol is evidence that, although he participated, he was utterly unprepared for what happened on January 6.

Mr. Caloia is less culpable than other defendants who received probationary sentences for their participation on January 6. In *United States v. Maimone*, the defendant witnessed violent attacks on police officers and stole PPE and a gas mask. She received

4

a sentence of 24 months' probation. Case No. 21-CR-00289-RDM.

In *United States v. Chang*, a former law enforcement officer received a 36-month probationary sentence. He had bragged about being part of the second American Revolution and 1776 part 2. 21-CR-00703-RDM.

Mr. Caloia is far more similar to the defendants in *Maimone* and *Chang* than he is to the unrepentant individuals who came ready to combat the police in the cases cited by the Government.

V.

PROBATION IS AN ADEQUATE SENTENCE

Mr. Caloia is by and large a law-abiding individual who was shocked by January 6 and his participation in it. Once he had time to reflect on the day, he erased the media he had captured. The fear and anticipation of prosecution have had a significant impact on him. He will not repeat his actions.

There is a need to send the general public a message that violent insurrection in an attempt to interfere with a lawful election cannot be tolerated. The mere fact that the Government is taking the time to track down and prosecute every individual involved is a significant deterrence to others who would consider participating in similar future activities. To the extent that some individuals must face incarceration, it should be reserved for those who came to Washington, D.C., planning to become involved in this activity.

Finally, judges in this district can and should hand down harsh sentences to those who were violent during the event and those who planned and organized the event. Those

like Mr. Caloia, who were swept up and used as pawns by organizers and politicians, do not need to be incarcerated to prevent a future event.

## VI.

## CONCLUSION

For all the reasons stated above, this Court should impose a sentence of 24 months of probation. This probation can include a condition of community service to require Mr. Caloia to make some amends for his participation in an event that risked tearing apart the nation.

Respectfully Submitted,

/s/ James R. Gerometta
Law Office of James Gerometta, PLLC
27 E. Flint St.
Suite 2
Lake Orion, MI 48362
(313) 530-9505
james@geromettalaw.com

Dated: October 16, 2024